## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Kemberly Phillips-Jones, individually and on behalf of all others similarly situated, | |
| | Case No. |
| *Plaintiff*, | |
| v. | JURY TRIAL DEMANDED |
| Zarbee's, Inc. | |
| *Defendant*. | |

## **Class Action Complaint**

## Table of Contents

I.  Introduction. ...............................................................................................................1

II.  Parties. .......................................................................................................................2

III.  Jurisdiction and Venue. ..............................................................................................2

IV.  Facts. ..........................................................................................................................3

    A.  It is important to consumers that over-the-counter melatonin is accurately dosed and labelled............................................................................................3

    B.  Scientific research reveals serious problems with the accuracy of melatonin dosing and labelling in Canada.  Scientists warn that the same is likely true of some U.S. brands. ..............................................................................4

    C.  Zarbee's sells over-the-counter melatonin supplements to millions of U.S. consumers. ..........................................................................................................5

    D.  Testing reveals that the amount of melatonin in Zarbee's is substantially higher than the amount claimed on the label. ...................................................7

    E.  Zarbee's Melatonin overdoses are unreasonably excessive. ............................8

    F.  Zarbee's labelling is false and misleading to reasonable consumers. ............11

    G.  Zarbee's overcharges millions of consumers...................................................13

    H.  Ms. Phillips-Jones was misled and harmed by Zarbee's misleading labelling.............13

V.  Class action allegations. ...........................................................................................14

VI.  Claims........................................................................................................................17

    Count 1: Violations of State Consumer Protection Acts ..........................................17

    Count 2: Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2 ......................................................................................................18

    Count 3: Breach of Express Warranty ......................................................................19

    Count 4: Unjust Enrichment/Quasi-Contract............................................................20

VII.  Jury Demand..............................................................................................................20

VIII.  Prayer for Relief........................................................................................................20

## I.    Introduction.

1.    Melatonin is a neurohormone that regulates the brain's sleep cycle.  Millions of consumers take over-the-counter melatonin supplements to help them sleep.  Because melatonin alters brain chemistry, it is important that these supplements are accurately dosed and labelled.  This is especially important when melatonin supplements are given to children.

2.    A few years ago, scientists tested Canadian melatonin supplements and found that, for a number of brands, the true amount of melatonin varied wildly from the label.  Scientists, the National Institute of Heath, and consumer advocates have warned that the same is true in the U.S.

3.    Zarbee's is a major U.S. brand of melatonin supplements, sold nationwide at retailers like Walmart, Kroger, and Target.  Many Zarbee's melatonin products are specifically marketed for young children.  Each bottle claims to have a specific dose of melatonin per serving.  For example:



4.    Like millions of other consumers, Ms. Phillips-Jones bought Zarbee's melatonin for her children and trusted the accuracy of Zarbee's dosing and labelling.  To determine how much melatonin is really in Zarbee's, a university mass-spectrometry laboratory tested multiple bottles,

including her bottle. The results were alarming—the bottles are unreasonably overdosed. For example, the true amount of melatonin in her bottle was 222% of the claimed amount.

5.     Zarbee's Melatonin is unreasonably overdosed and inaccurately labelled. Consumers are being misled and overcharged.

## II.     Parties.

6.     Plaintiff Kemberly Phillips-Jones is domiciled in Chicago, Illinois.

7.     The proposed class includes citizens of every state.

8.     Defendant Zarbee's, Inc. is a Delaware corporation with its principal place of business at 11650 S. State St. #101, Draper, Utah 84020.

## III.     Jurisdiction and Venue.

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

10.     The Court has personal jurisdiction over Defendant because Defendant sold Zarbee's melatonin products to consumers in Illinois, including to Plaintiff. Zarbee's has been doing business in Illinois during all relevant times. Directly and through its agents, Zarbee's has substantial contacts with Illinois, has purposefully availed itself of the Illinois market, and has received substantial benefits and income from Illinois.

11.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

#### IV.    Facts.

##### A.    It is important to consumers that over-the-counter melatonin is accurately dosed and labelled.

12.    Melatonin (N-acetyl-5-methoxytryptamine) is a neurohormone produced by the pineal gland in the brain.  It regulates the brain's circadian rhythm and sleep cycle.



*The chemical structure of melatonin*

13.    Millions of U.S. consumers take melatonin supplements to treat sleep problems, anxiety, and other issues.  Melatonin is one of the most popular over-the-counter supplements in the U.S.  Its use for children is becoming increasingly popular too, which concerns health experts. [1]

14.    As scientists explained in the Journal of Clinical Sleep Medicine, because melatonin is "self-prescribed" (i.e., purchased directly by consumers who are not experts), it is particularly "important that labels are informative and representative of the product," i.e., that the "label claim values for the active ingredient are accurate." [2]  When melatonin is falsely labelled, "higher doses could lead to unpleasant/unexpected side effects." [3]  Side effects of melatonin include headaches,

---

[1] The New York Times, *Parents Are Relying on Melatonin to Help Their Kids Sleep. Should They?*, https://www.nytimes.com/2020/05/18/parenting/melatonin-sleep-kids.html
[2] Erland, L. & Saxena, P., *Melatonin Natural Health Products and supplements: Presence of serotonin and significant variability of melatonin content*, 13 Journal of Clinical Sleep Medicine 275–281 (2017).
[3] Grigg-Damberger, M. & Ianakieva, D., *Poor quality control of over-the-counter melatonin: What they say is often not what you get*, 13 Journal of Clinical Sleep Medicine 163–165 (2017).

dizziness, nausea, or excessive or unwanted sleepiness. [4] "Many experts recommend starting with the smallest available dosage — 0.5 milligrams to 1 milligram." [5] When melatonin is given to children, the American Academy of Pediatricians (AAP) warns that "quality may not be the same for all melatonin products" and recommends its use only "cautiously and carefully." The AAP recommends: "Start with the lowest dosage. Many children will respond to a low dose (0.5 mg or 1 mg)." [6] And regardless of side effects, consumers don't want to take excessive amounts of a neurohormone that alters brain chemistry. Consumers certainly don't want to give unexpectedly high doses to their children.

>
> **B.     Scientific research reveals serious problems with the accuracy of melatonin dosing and labelling in Canada. Scientists warn that the same is likely true of some U.S. brands.**

15.     In 2017, a study of Canadian melatonin brands found "high variability, ranging from −83% to +478%, of the labelled concentration of melatonin content in melatonin supplements." [7] For over 70% of the tested brands, the true amount of melatonin varied more than 10% from the listed amount. The amount of melatonin also varied highly between different lots (manufacturing batches) of the same product. The researchers concluded that "manufacturers require increased controls to ensure melatonin supplements" are accurately labelled.

---

[4] NIH National Library of Medicine Medline Plus, Melatonin, https://medlineplus.gov/druginfo/natural/940.html
[5] The New York Times, *Melatonin Isn't a Sleeping Pill. Here's How to Use It*, https://www.nytimes.com/2022/01/11/well/mind/melatonin-sleep-insomnia.html
[6] *Melatonin for Kids: What Parents Should Know About This Sleep Aid*, healthychildren.org (from the American Academy of Pediatricians), https://www.healthychildren.org/English/healthy-living/sleep/Pages/melatonin-and-childrens-sleep.aspx
[7] Erland, *Melatonin Natural Health Products and supplements*, 13 Journal of Clinical Sleep Medicine at 276.

4

16.     U.S. scientists warned that this Canadian study "herald[s] what may also be true in OTC melatonin supplements marketed in the United States."[8] Likewise, the National Institute of Health has warned that "some melatonin supplements may not contain what's listed on the product label."[9] And Consumer Reports warned: "The findings … offer the latest proof of something supplement industry critics have long warned about: When it comes to this poorly regulated corner of modern medicine, consumers often don't know what they're buying."[10]

**C.     Zarbee's sells over-the-counter melatonin supplements to millions of U.S. consumers.**

17.     Zarbee's is a major U.S. brand of melatonin supplements.  Its melatonin products ("Zarbee's Melatonin") are available nationwide at retailers like Walmart, Kroger, and Target. Millions of U.S. consumers buy Zarbee's Melatonin and rely on the accuracy of its labelling.  Many Zarbee's Melatonin products are marketed specifically for children.

18.     Zarbee's makes and sells several varieties of Zarbee's Melatonin, including the following non-limiting examples:  Zarbee's Children's Sleep with Melatonin Gummies, Zarbee's Children's Sleep Chewable Tablet with Melatonin Supplement, and Zarbee's Sleep with Melatonin Gummy.  For each product, the label claims a specific amount of melatonin per serving, e.g., 1 mg or 3 mg.  Illustrative example products are shown below:

---

[8] Grigg-Damberger, *Poor quality control of over-the-counter melatonin*, 13 Journal of Clinical Sleep Medicine at 163.
[9] NIH National Center for Complementary and Integrative Health, *Melatonin:What You Need To Know*,  https://www.nccih.nih.gov/health/melatonin-what-you-need-to-know
[10] Consumer Reports, *New Study Questions Ingredient Levels in Some Melatonin Supplements*, https://www.consumerreports.org/melatonin/study-questions-ingredient-levels-some-melatonin-supplements/




| Supplement Facts | | | |
|---|---|---|---|
| Serving Size: | 1 Gummy | 1 Gummy | 2 Gummies |
| Servings Per Container: | 50 | 50 | 25 | 3 Gummies about 16 |
| Amount Per Serving | %DV Children 3 Years of Age | %DV Children 4 through 5 Years of Age | %DV Children 6 through 11 Years of Age | %DV Children 12 Years of Age and Older |
| Calories | 10 | 10 | 20 | 30 |
| Total Carbohydrate | 2 g | 1%** | 2 g | 4 g <1%** | 6 g 2%*** |
| Total Sugars | 2 g | 2 g | † | 4 g | 6 g |
| Includes Added Sugars | 2 g 8%** | 2 g 8%** | 4 g 8%*** | 6 g 12%*** |
| Melatonin | 1 mg † | 1 mg † | 2 mg † | 3 mg † |

**Percent Daily Values (DV) are based on a 1,000 calorie diet.
***Percent Daily Values (DV) are based on a 2,000 calorie diet.
† Daily Value (DV) not established.

OTHER INGREDIENTS: HONEY, GLUCOSE SYRUP, SUCROSE, WATER, PECTIN, NATURAL FLAVORS, CITRIC ACID, SODIUM CITRATE, COLORS ADDED (FRUIT JUICE, VEGETABLE JUICE).






| Supplement Facts | | | |
|---|---|---|---|
| Serving Size | 1 Tablet | 1 Tablet | 2 Tablets |
| Servings | 30 | 30 | 15 |
| Amount Per Serving | % DV Children 3 Years of Age | % DV Children 4 through 5 Years of Age | % DV Children 6 through 12 Years of Age |
| Melatonin | 1 mg † | 1 mg † | 2 mg † |

† Daily Value (DV) not established.

OTHER INGREDIENTS: SUGAR, XYLITOL, MALTODEXTRIN, CITRIC ACID, STEARIC ACID, COLORS ADDED (DRIED VEGETABLE AND FRUIT JUICE FROM CARROT AND HIBISCUS), CORNSTARCH, CONTAINS <2% OF: SILICON DIOXIDE, NATURAL FLAVOR, CROSCARMELLOSE SODIUM, REBAUDIOSIDE A (STEVIA LEAF EXTRACT)



19.     All Zarbee's Melatonin products are substantially similar.  They all advertise melatonin as an active ingredient and claim to have a specific amount of melatonin per serving.

**D.     Testing reveals that the amount of melatonin in Zarbee's is substantially higher than the amount claimed on the label.**

20.     Liquid Chromatography-Mass Spectrometry analysis (LC-MS) can accurately measure the true amount of melatonin in an over-the-counter supplement.  A university mass-spectrometry laboratory used LC-MS to test Zarbee's Melatonin.  The lab tested bottles from different manufacturing batches (lots).  The results are summarized below:

| Zarbee's type | Claimed melatonin dose (mg / gummy) | True melatonin dose (mg / gummy)[11] | True melatonin dose (%)[12] |
|---|---|---|---|
| Zarbee's Children's Sleep with Melatonin Gummies (Lot# 2124301250) | 1.00 | 1.29 | +128% |
| Zarbee's Children's Sleep with Melatonin Gummies (Lot# FA20090122268)[13] | 1.00 | 2.23 | +222% |

21.     As the results show, the melatonin content of Zarbee's is consistently (and randomly) overdosed.  Consistent with the study of Canadian brands, the dosages vary substantially between lots.  One of the bottles (Plaintiff's bottle) had more than twice the amount of melatonin listed on the label.

**E.     Zarbee's Melatonin overdoses are unreasonably excessive.**

22.     For dietary supplements, the FDA states that "reasonable excesses over labeled amounts are acceptable within current good manufacturing practice." 21 C.F.R §101.36(f)(1).  This means that a manufacturer can add enough melatonin such that the dosage "meets the amount specified on the label throughout the product's shelf life." Current Good Manufacturing Practice in Manufacturing, Packaging, Labeling, or Holding Operations for Dietary Supplements, 72 Fed. Reg. 34752, 34884 (June 25, 2007). But the FDA prohibits a manufacturer from adding "unspecified amounts [of an ingredient] that would be in excess of the amount actually needed to meet the label declaration." 68 Fed. Reg. 12158, 12158 (Mar. 13, 2003). Accordingly, an excess is not a "reasonable excess" (and violates FDA regulations) if the excess is materially more than necessary to meet the amount specified on the label throughout the product's shelf life.  Notably, the FDA does not

---

[11] The lab tested three gummies per bottle and averaged the results.
[12] The percentage ratio of the true dose to the claimed dose.
[13] Ms. Phillips-Jones' bottle.

review and approve any particular overages for dietary supplements—the duty falls on manufacturers to assure compliance with the "reasonable excess" limit. Here, Zarbee's is violating that duty.

23. Testing has shown that melatonin by other U.S. manufacturers who do not unreasonably overdose their products has only around a 10-15% excess when the product is purchased. As a result, by the time the shelf life ends, the products have approximately the amount of melatonin that is specified on the label. Zarbee's Melatonin, in contrast, has a much higher excess of melatonin, compared to other U.S. manufacturers. Testing an expired Zarbee's Melatonin bottle has confirmed that the dosing is unreasonably excessive.

24. If Zarbee's were reasonably dosed, the amount of melatonin at the end of the shelf life would be materially the same as the claim on the label, i.e., close to 100% of the claimed amount. In contrast, if Zarbee's is unreasonably overdosed, even after a bottle expires (i.e., its shelf life is over) there will be materially more melatonin than the amount specified on the label.

25. The laboratory tested Plaintiff's expired bottle of Zarbee's Melatonin (Lot# FA20090122268). This bottle expired in September 2022. Yet when it was recently tested, it still had 222% of the claimed melatonin content. In other words, after expiration, the bottle was still substantially overdosed. Because the excess is materially more than reasonably necessary to ensure that the melatonin meets the amount specified on the product label throughout the product's shelf life, Zarbee's Melatonin is unreasonably overdosed.

26. Furthermore, an unnecessary excess is particularly unreasonable if the excess is known to increase the risk of adverse side effects. The likelihood of side effects from melatonin increases with the dosage. This is confirmed by peer-reviewed research: when melatonin is falsely

9

labeled, "higher doses could lead to unpleasant/unexpected side effects." [14]  As the Texas Health

hospital network explains, a "lower dose" will reduce the risk of "side effects" and thus "using the

lowest effective dose will give you the best outcomes while keeping any undesirable side effects at

bay." [15] And as another major manufacturer of melatonin supplements states: "The likelihood of

these side effects [headaches, upset stomach, grogginess, sleeplessness, irritability and dizziness]

increases with the dosage."[16] This is why, as explained above, experts recommend starting with a

lower dose and only escalating as necessary.  This is especially important for children.  As mentioned

above, for children, the American Academy of Pediatricians recommends: "Start with the lowest

dosage. Many children will respond to a low dose (0.5 mg or 1 mg)." [17]  Due to Zarbee's excessive

dosing, parents are unwittingly exceeding the recommended starting dose and unwittingly increasing

the risk of adverse side effects.

27.     In addition, an unnecessary excess of an ingredient is unreasonable if the long-term

safety is not established. This is especially true for a neurohormone like melatonin, which can alter

brain chemistry. As the National Institute of Health explains, the long-term safety of melatonin

remains unknown:

> For melatonin supplements, particularly at doses higher than what the body normally
> produces, there's not enough information yet about possible side effects to have a clear
> picture of overall safety. Short-term use of melatonin supplements appears to be safe for
> most people, but information on the long-term safety of supplementing with melatonin is
> lacking.[18]

---

[14] Grigg-Damberger, M. & Ianakieva, D., Poor quality control of over-the-counter melatonin: What they say is often not what you get, 13 Journal of Clinical Sleep Medicine 163–165 (2017).
[15] https://www.texashealth.org/areyouawellbeing/Health-and-Well-Being/Is-It-Safe-to-Take-Melatonin-Every-Night
[16] https://www.zzzquil.com/en-us/faq/zzzquil-pure-zzzs-melatonin-faq  (made by Proctor & Gamble)
[17] *Melatonin for Kids: What Parents Should Know About This Sleep Aid*, healthychildren.org (from the American Academy of Pediatricians), https://www.healthychildren.org/English/healthy-living/sleep/Pages/melatonin-and-childrens-sleep.aspx
[18] https://www.nccih.nih.gov/health/melatonin-what-you-need-to-know

Long-term safety is especially uncertain for children:

> Melatonin supplements at normal doses appear to be safe for most children for short-term use, but there aren't many studies on children and melatonin. Also, there's little information on the long-term effects of melatonin use in children. Because melatonin is a hormone, it's possible that melatonin supplements could affect hormonal development, including puberty, menstrual cycles, and overproduction of the hormone prolactin, but we don't know for sure.[19]

28.     For this additional reason, Zarbee's unnecessary excess dosing of melatonin is unreasonable.

29.     In sum, (a) Zarbee's overdosing is far more than needed to meet the label declaration throughout the shelf life; (b) the excessive dosing increases the risk of adverse side effects; and (c) the long-term safety of melatonin is uncertain. For all of these reasons, Zarbee's overdoses are unreasonably excessive. This is prohibited (not permitted) by FDA regulations. Plaintiff's claims challenge this unreasonable excess and Zarbee's false and misleading labelling.

**F.     Zarbee's labelling is false and misleading to reasonable consumers.**

30.     By selling a melatonin supplement for sleep (i.e., a supplement that alters brain chemistry), Zarbee's is representing to consumers that its products are accurately dosed and labelled. When a consumer picks up a bottle of Zarbee's Melatonin, they reasonably expect that it actually has the dosage for which Zarbee's designed the recommended serving.  No reasonable consumer expects that a melatonin supplement has an unreasonable overdose of melatonin, compared to what it is supposed to have.  And specifically, when a bottle of Zarbee's says it has a particular amount of melatonin per serving (e.g., 1 mg), consumers expect this to be accurate.   This is especially true for melatonin marketed for children. But the truth is, the dosing is not reasonably accurate. In this way, Zarbee's affirmative representations are misleading to reasonable consumers.

---

[19] https://www.nccih.nih.gov/health/melatonin-what-you-need-to-know

31.     The inaccurate dosing and labelling of Zarbee's Melatonin is highly material to reasonable consumers. Consumers need melatonin supplements to be accurately dosed and labelled, so that consumers aren't unknowingly ingesting more neurohormone than they intend to take. No reasonable consumer wants to buy and ingest a supplement containing an unreasonably excessive amount of melatonin, compared to what they intend to take. This is particularly true for melatonin supplements aimed at children.

32.     Zarbee's recognizes that its consumers demand accuracy in dosing and labelling. Zarbee's sells different types of Zarbee's Melatonin, with different claimed strengths, so that consumers can choose what is right for them. A higher dose comes with a higher risk of adverse side effects and more concern for long-term safety. When melatonin is truthfully and accurately labelled, consumers can make an informed choice about the risks they want to take. Consumers can also follow the advice of experts, which is to start with lower doses and escalate only if necessary. If a consumer selects a 1 mg dose, as opposed to a higher dose, this is because that consumer wants 1 mg and no more. But when melatonin is misleadingly labelled, consumers are unwittingly subjected to unreasonably higher doses and the accompanying risk of adverse side effects and long-term safety concerns. To reasonable consumers, who want to make an informed choice about how much neurohormone they are taking, this is not acceptable. This is why the FDA itself requires that any excess be reasonable, and not unreasonable.

33.     Zarbee's recognizes that it is undesirable for consumers to ingest more melatonin than the recommended dosage. Zarbee's states on its bottles: "Take only as directed" and "Do not exceed recommended serving." But due to Zarbee's excessive dosing, consumers are unknowingly doing exactly what Zarbee's recommends against (exceeding the recommended dosages).

**G. Zarbee's overcharges millions of consumers.**

34. Zarbee's false and misleading labelling drives the demand for Zarbee's Melatonin. As explained above, consumers demand melatonin that is accurately dosed and labelled. This is recognized by scientists, Consumer Reports, and Zarbee's itself. If consumers knew the truth—that its dosing and labelling was seriously inaccurate—the price of its products would crater. For example, on the Target website, a bottle of Zarbee's Children's Sleep with Melatonin Gummies costs $15.29. If consumers knew that this bottle was unreasonably dosed and inaccurately labeled — Zarbee's could not sell it for anything close to $15.29 (or sell it at all). For example, a reasonable consumer who wanted to buy a product with 1 mg of melatonin would not buy an unreasonably dosed and inaccurately labelled product, and would instead buy a reasonably dosed and accurately labeled product. Plaintiff and each class member paid a substantial price premium driven by Zarbee's false and misleading labelling.

35. In fact, without accurate dosing and labelling, Zarbee's Melatonin is worthless. What reasonable consumer wants to buy a supplement that alters brain chemistry, if the product is inaccurately labelled and unreasonably dosed? Plaintiff and each class member paid for Zarbee's Melatonin products that are, in truth, worthless. Thus, the full economic injury here is the entire price of the Zarbee's Melatonin that Plaintiff and class members purchased.

**H. Ms. Phillips-Jones was misled and harmed by Zarbee's misleading labelling.**

36. Like millions of other consumers, Ms. Phillips-Jones bought Zarbee's Melatonin and relied on the accuracy of Zarbee's dosing and labelling.

37. In or around June or July 2021, Ms. Phillips-Jones bought a bottle of Zarbee's Children's Sleep with Melatonin Gummies (Lot # FA20090122268) from a Meijer in Chicago, to give to her children (ages 7 and 13). Because she was buying a melatonin supplement that could alter brain chemistry in her children, she relied on the fact that Zarbee's dosages were well-controlled

(i.e., that the actual dosage would match the recommended dosages). She read and relied on the accuracy of the melatonin content on the label, when buying the product and deciding to give it to her children. She gave her children the doses recommended on the bottle. She noticed that when her children took the Melatonin at night, they experienced unwanted grogginess even after waking. When she noticed this, she stopped giving the product to her children. She would not have purchased the product, at the price she paid, if she knew that Zarbee's was adding unspecified amounts of melatonin in excess of the amount actually needed to meet the label claims. In fact, knowing the truth, the product is worthless to her. The economic injury she suffered is the price premium she paid for the product that, due to its inaccurate dosing and labelling, is substantially less valuable (in fact it is worthless).

38. Plaintiff wants Zarbee's to fix its manufacturing practices and sell its melatonin products with reasonable dosing and accurate labelling. If Zarbee's fixes its products, so that they are accurately dosed and labelled, she would buy them again. But given Zarbee's past deception, Plaintiff cannot rely on Zarbee's word alone that it has fixed the problem. Plaintiff faces an imminent threat of harm because she will not be able to rely on Zarbee's labels in the future, and will not be able to buy Zarbee's Melatonin, even if Zarbee's claims to have fixed the issue. To buy Zarbee's products again, Plaintiff needs the Court to enter an order forbidding Zarbee's from selling its melatonin unless it has fixed the dosing and labelling problem. With that Court order in hand, Plaintiff could and would buy Zarbee's Melatonin again. And with that order in hand, millions of other consumers will be protected from being deceived like Plaintiff was deceived.

**V.    Class action allegations.**

39. Plaintiff brings her claims individually and on behalf of the following class and subclasses:

14

| Class or Subclass Name | Definition |
| --- | --- |
| Nationwide Class | All persons who purchased Zarbee's Melatonin in the United States during the applicable statute of limitations. |
| Multi-State Consumer Protection Subclass | All persons who purchased Zarbee's Melatonin in the identified states (*see* Count 1) during the applicable statute of limitations. |
| Illinois Subclass | All persons who purchased Zarbee's Melatonin in Illinois during the applicable statute of limitations. |

40. The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assignees of any excluded persons.

***Numerosity***

41. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are millions of proposed class members.

***Commonality***

42. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- Whether Zarbee's Melatonin products are reasonably dosed and accurately labeled:

- Whether Zarbee's labelling is misleading to reasonable consumers;

- Whether Zarbee's violated state consumer protection laws;

- The monetary relief needed to reasonably compensate Plaintiff and the proposed class.

### Typicality

43.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Zarbee's Melatonin.

### Predominance and Superiority

44.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that Zarbee's Melatonin labelling is found to be misleading for some consumers, but not other similarly-situated consumers.

45.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Zarbee's labelling is misleading to reasonable consumers.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to separately litigate millions of individual claims.

### Classwide injunctive relief

47.     Zarbee's has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

**VI.    Claims.**

**Count 1: Violations of State Consumer Protection Acts**

**(on behalf of Plaintiff and the Multi-State Consumer Protection Subclass)**

48.    Plaintiff incorporates each and every factual allegation set forth above.

49.    As alleged below, Plaintiff brings individual and subclass claims based on Illinois law.

For the Multi-State Consumer Protection Subclass, Plaintiff brings this count for violations of state

consumer protection laws that are materially-similar to the laws of Illinois, including:

| State | Statute |
| --- | --- |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following; Cal. Civ. Code §1750 and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |

50.    Each of these statutes is materially similar.  Each broadly prohibits deceptive

conduct in connection with the sale of goods to consumers.  No state requires individualized

reliance, or proof of defendant's knowledge or intent.  Instead, it is sufficient that the deceptive

conduct is misleading to reasonable consumers and that the conduct proximately caused harm.

51.    As alleged in detail above, Zarbee's misrepresentations are misleading to reasonable

consumers in a material way.  Zarbee's false and misleading labelling was a substantial factor in

Plaintiff's purchase decisions and the purchase decisions of class members.

52.     Plaintiff and class members were injured as a direct and proximate result of Zarbee's conduct because: (a) they would not have purchased Zarbee's Melatonin if they had known that Zarbee's was unreasonably overdosed and inaccurately labeled; (b) they overpaid for the products because the products are sold at a price premium due to Zarbee's misleading labelling; or (c) they received products that were, in truth, worthless.

### Count 2: Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 ILCS 505/2

**(on behalf of Plaintiff and the Illinois Subclass)**

53.     Plaintiff incorporates by reference each and every factual allegation set forth above.

54.     Plaintiff brings this cause of action individually and for the Illinois Subclass.

55.     Plaintiff and the Subclass purchased Zarbee's Melatonin products in Illinois.

56.     As alleged in detail above, Defendant's false and misleading labelling had the capacity to deceive a substantial portion of the public into believing that the Zarbee's Melatonin products is reasonably dosed and accurately labeled.

57.     Defendant's unreasonable dosing and inaccurate labeling were material.  As alleged in detail above, this false and misleading labelling was important to consumers and affected their choice to purchase Zarbee's Melatonin products.

58.     Defendant labeled the products this way because it intended consumers to rely on the labels and to believe that the products were reasonably dosed and accurately labeled.

59.     Defendant's misrepresentations occurred in the conduct of trade or commerce affecting the people of the State of Illinois.

60.     Plaintiff and class members were injured as a direct and proximate result of Zarbee's conduct because: (a) they would not have purchased Zarbee's Melatonin if they had known that Zarbee's was unreasonably overdosed and inaccurately labeled; (b) they overpaid for the products

because the products are sold at a price premium due to Zarbee's misleading labelling; or (c) they received products that were, in truth, worthless.

## Count 3: Breach of Express Warranty

### (on behalf of the Nationwide Class)

61.     Plaintiff incorporates by reference each and every factual allegation set forth above.

62.     Plaintiff brings this cause of action individually and on behalf of the Nationwide Class.

63.     Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or seller of the Zarbee's Melatonin products, issued a material, written warranty by representing that Zarbee's Melatonin products contained the specific amount of melatonin identified on the label. This was an affirmation of fact about the products and a promise relating to the goods.

64.     This warranty was part of the basis of the bargain for Plaintiff and Class members. Plaintiff herself read and relied on this warranty.

65.     The Zarbee's Melatonin products do not conform to this warranty because, as alleged in detail above, they are not reasonably dosed and are inaccurately labelled.

66.     Plaintiff provided Defendant with notice of this breach of warranty (on behalf of herself and the class), by mailing a notice letter to Defendant's headquarters on August 15, 2022.

67.     Plaintiff and class members were injured as a direct and proximate result of Zarbee's conduct because: (a) they would not have purchased Zarbee's Melatonin if they had known that Zarbee's has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Zarbee's misleading labelling; or (c) they received products that were, in truth, worthless.

**Count 4: Unjust Enrichment/Quasi-Contract**

**(on behalf of Plaintiff and the Nationwide Class)**

68. Plaintiff incorporates by reference the facts alleged above.

69. As alleged in detail above, Zarbee's false and misleading labelling caused Plaintiff and the class to purchase Zarbee's Melatonin and overpay for it.

70. In this way, Zarbee's received a direct and unjust benefit, at the expense of Plaintiff and the class.

71. Plaintiff and the class seek the equitable return of this unjust benefit.

**VII.    Jury Demand.**

72. Plaintiff demands a jury trial on all issues so triable.

**VIII.    Prayer for Relief.**

73. Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages;

- Restitution, disgorgement, and other just equitable relief;

- Punitive damages, as available by law;

- Attorney's fees, as available by law;

- An injunction;

- Pre- and post-judgment interest;

- Any additional relief that the Court deems reasonable and just.

Dated: October 5, 2022

Respectfully submitted,

By: /s/ Jonas Jacobson

Jonas Jacobson (Cal. Bar No. 269912)*
Simon Franzini (Cal. Bar No. 287631)*
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069
jonas@dovel.com
simon@dovel.com

*Counsel for Plaintiff*

*Generally Admitted